The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable of the United States Court of Appeals for the Fourth Circuit are admonished to draw. Admonished to give their attention for the Court is now sitting. God save the United States and this Honorable Court. All right. Good morning. You may be seated. Welcome to the Fourth Circuit. We're ready to hear argument in our first case, Stinnie v. Holcomb. Whoever's arguing for appellate. Good morning, Your Honor. May it please the Court, my name is Tenille Chekovich. I'm here representing the plaintiff's appellants on a pro bono basis. I'd like to reserve five minutes of time for rebuttal. Following the first appeal in this case, Chief Judge Gregory remarked in his dissenting opinion that by suspending the licenses of those who cannot pay for reasons outside of their control, the state traps thousands of Virginians in a nightmarish spiral for which there is no apparent exit. Indeed, when plaintiffs began this litigation, they had a simple goal, to stop the defendant from unjustly punishing their poverty through the suspension of their driver's licenses without due process under Section 46.2-395. On December 21, 2018, plaintiffs achieved that goal when the District Court entered a well-reasoned and warranted preliminary injunction which changed the plaintiff's lives. Plaintiffs meet the standard for qualifying as prevailing parties for a simple reason. The District Court's merit-based preliminary injunction materially altered the relationship among the parties in a way that directly benefited plaintiffs. Before the injunction, plaintiffs suffered ongoing unconstitutional deprivations of their driver's licenses and the specter of hefty reinstatement fees to get them back. And what would you have us do with our President and Smith? Well, Your Honor, as we've argued in our papers, we believe that the Smith case is no longer the prevailing law. Defendant would have the court deny plaintiff's petition based on Smith, saying that it creates this bright-line rule denying fees in cases involving preliminary injunctions. But more recent Supreme Court precedent confirms that plaintiff's As the magistrate judge found in the... The lefamine was a permanent injunction case, wasn't it? That's correct. But if you apply the legal standards in lefamine, there's no difference in the facts of that case and this one that matter. The plaintiff... Well, I mean, one could argue that a permanent versus preliminary injunction does matter. Well, in this case, albeit very unusual circumstances where it was mooted... The case was mooted before it proceeded, there was no opportunity to go through continued proceedings. So the defendant, by seeking a stay, actually stood in the way of further litigation here. But the important thing is that throughout the entire time that the plaintiffs needed relief in this case, they had it from the court. So they obtained the preliminary injunction and it remained in place for months. While the case was stayed and the legislature was doing its thing. What the legislature did, though, doesn't detract from the important relief that the plaintiffs obtained in the injunction. Sure, and I agree. I mean, we've had a recent case that reaffirms that principle that the legislature's actions probably aren't something that, for example, moots the case and takes away the entitlement. But there's got to be the entitlement there in the first place. And that's what I'm trying to figure out. I think your point is well taken that here, you may have been deprived of your chance to get to the level of an injunction that would entitle you to fees under our current law. And maybe that's something we look at. But it seems to me we either have to overrule Smith or which we can't do or or say that that may be the circumstances where you're prevented from getting a permanent injunction somehow and tie you to it. I don't see how you can how we can do anything else with Smith in the way. Well, as we've argued in our briefing, the underpinnings of the Smith case have been washed away by the change in the preliminary injunction standard. So the winter standard is much stricter in terms of its requirements on the merits. And Smith is very clear that it's focused on the balancing between the equities and the determination on the merits. And it's concerned about the fact that a plaintiff could get an injunction merely by showing that the equities are heavily in their favor without a showing off. Counsel, can I stop you? Because I agree with you that that's a big part of Smith's concern. But it does look to me as though Smith kind of went out of its way to clarify in those footnotes at pages 8 and 9. Like, yeah, that may be what we're concerned about. But to be clear, this rule applies even if we're not applying our kind of sliding scale approach to preliminary relief and whether or not a preliminary injunction rests on merits-based finding. To the extent that Smith goes beyond the injunction that was decided under the Blackwelder standard that was at issue in that case, that discussion in those footnotes is dicta, that this court is not required to follow. The new current standard on injunctions didn't exist at the time that Smith was decided. And so to the extent that that opinion attempts to reach that issue, it's simply hypothetical. It's talking about something that hasn't happened yet. And so, for instance, we could imagine a situation where the preliminary injunction standard changed again. And now it requires that you have to prove that you win your case. You win on the merits to get the injunction. Surely no one would be arguing that Smith still stood. Because that statement, that no preliminary injunction could possibly ever meet the standard for prevailing party, wouldn't make sense in a world where the standard was you've proven your case. And here in this case, the plaintiffs did prove their case on the preliminary injunction. This was not a situation where someone went in at the very beginning of a case. We had experts, many witnesses testifying. And importantly, the judge's ruling was based largely on a facial constitutionality issue. Something that can be decided based on the text of the statute and the law. But where is the, counsel, I think that's a fair assessment. It is a order regarding preliminary injunction that has a lot of characteristics of permanency to it or merits to it. So I think that's a fair description. But we'd have to find something that says, okay, we can look at preliminary injunction orders and kind of do a case-by-case analysis and say, okay, that's got enough merits to it, that one doesn't. And again, maybe the dicta argument is something that allows that. But it's hard to see that with our precedent. So I think we come to the case, to me, of either, or it seems that either you have to side Smith's untenable and maybe that's your argument, that it goes to the level of being untenable. But if you look at our Banks case and our Dodge cases, that's a pretty high bar. Maybe it's different now, but different is not the same as untenable. Is it your argument that it is untenable? Yes, we certainly believe that it is. The entire basis of Smith is really revolving around the standard in place at the time under Blackwelder and the importance of the balancing test there. And it's reading a lot into those footnotes to say that it's a clear forever bar and no preliminary injunction could ever meet the standard, even if the Supreme Court has changed the preliminary injunctions. What do you do with our Gee case that's a recent case that applies Smith well after Winner? Your Honor mentioned Dodge as well, and Gee is a case that you would talk about when looking at Dodge and the analysis in Dodge. This is not a case like Dodge because here we do not have with Smith a case that has been relied upon in scores of opinions on the merits. If you look at the history of Smith since the Lefamine case, there have only been six decisions that cite it. None of them involve preliminary injunctions. So there is not a... Wasn't Gee a preliminary injunction case? No, it was actually an immigration case involving an unusual remand order. And that's one of the many differences here. In Gee, the order was truly procedural. It set a calendar for deciding the merits of the case. It made no attempt to even touch upon the merits of the case. And here, obviously, the order was very different. The judge found that the statute didn't provide process, and that process of some sort was required. So is your... Under your argument or theory of the case, what's the rule that you would have us adopt? Is the rule that we're not bound by Smith, we got Winner changes Blackwelder, so Smith's kind of in the rearview mirror. Now here's the new rule. Is your argument that you look at the order to see whether it's sufficiently merits-based and we decide on that basis? We think this Court should apply the language in Lefamine that says that a plaintiff prevails when actual relief on the merits of the claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff. And in doing so, what we would say is in this case, clearly, the injunction reached the merits and relief was given that was significant to these plaintiffs. Their licenses were no longer suspended. The DMV was prohibited from enforcing the statute against them. And he had to give their licenses back without charging them the reinstatement fee. That's obvious material relief. They were now able to drive without the fear of arrest for having a suspended license. And those changes are marked by a judicial order that has imprimatur. There can't be any argument here that this was the defendant's voluntary conduct. The Court ordered this relief in the preliminary injunction. Counsel, can I ask you a question? I don't want to complicate your life further, but sort of our case law on this, we do have some case law suggesting that even a final injunction, if it is vacated, means that the party who won the final injunction is no longer a prevailing party. What would you have us do with that? So you can look to the sole case, which talks about if you're divested of your relief at some point during the case. And I would say that that certainly applies to preliminary injunctions in general. So in the sole case where you had a preliminary injunction awarded and then later the plaintiff lost, they were no longer prevailing. And that would certainly be the case. But I'm concerned. So the cases from other circuits that find that preliminary injunctions are sufficient, they sort of start from the premise, which is true in those circuits, that look, if you get a final injunction or final judgment with an injunction and it is later vacated as moot, you remain a prevailing party. But our law on that is, at a minimum, much less clear. We do have some cases at least suggesting that even if you win a final judgment with an injunction and it's vacated as moot, not overturned as incorrect, but vacated as moot, you may no longer be a prevailing party. I guess my response to that, Your Honor, would be that in this case that's simply not applicable. So I don't have that concern here because we never lost the injunction. It remained in place right up until the end. And then the parties stipulated the case was moot because of the legislation. But the court never entered any order that affected any of the relief the plaintiffs got, and that's the crux of the issue. This was an action by the legislature and not by the court. In his response, the defendant argues about the costs and benefits  But when the DMV decides to defend an unconstitutional law and fights at every corner, it has to live with the decision when it loses on a merits-based preliminary injunction, even if the legislature later repeals the law in an apparent attempt to stop the DMV from continuing to incur costly legal fees. Section 46.2395 trampled on plaintiffs' constitutional rights, and the district court rightly enjoined its enforcement. The plaintiffs are prevailing parties under Supreme Court law, and courts around the country are reaching that conclusion in factually analogous cases. This court should do the same. For these reasons, plaintiffs ask this court to reverse the decision of the district court, hold that plaintiffs are prevailing parties, and to remand the case for further proceedings based upon any standard this court should adopt. Thank you. All right, Mr. Cox. Thank you, Your Honors. And may I please the court, Trevor Cox from Hunt and Andrews Kurth, on behalf of the Commissioner. I have three points to make in opposition to plaintiffs' arguments. First, under this court's binding precedent in Smith, which we've been discussing, plaintiffs did not achieve prevailing party status by obtaining a temporary PI. This court must follow Smith in the lesson until it is overturned or called into serious doubt by the on-bank court or the U.S. Supreme Court. And my second point is just that, that the Supreme Court has not undermined Smith or called its reasoning into doubt. The two cases cited by plaintiff, Winter and Lefamine, simply do not have the impact that plaintiffs would like them to have. And the Supreme Court's denial of certiorari in a Sixth Circuit case a couple years ago has no precedential value. Third, even if this panel could depart from Smith, and even if there were a reason to adopt a different rule as some other circuits have, this is not a case in which a departure from Smith is warranted. So, first, to be clear, plaintiffs are asking this court to ignore the binding circuit precedent in Smith that a PI alone does not make a plaintiff a prevailing party. And I don't think even plaintiffs... I want to understand why, your third point, why you don't think that this is a case where it would be warranted that they're the prevailing party. Sure, and I don't... To be clear, I don't think you even have to get to that point because... Right, I understand, but what if we do? If this court, or more properly, the on-bank court, were to think that some exception to the rule is appropriate, when you look at other circuits, they tend to fall into a few different categories. One is where the event itself has passed, where you have, you know, a permit for a protest or something, and then you get a preliminary injunction against the activity and the event is over, so you've actually achieved what you wanted to have. Another is if the defendant agrees that the policy is unconstitutional, and that leaves nothing further to be done. That's the PAPB case in the Third Circuit and Select Milk in D.C. And then, finally, you have cases where it's mooted by a change in policy that is directly responsive to the suit. That's the Dearmore case in the Fifth Circuit. That seems like this case. Not so respectfully, Your Honor. And I think that's true for several reasons. First, it was repealed over... The reform effort that led to its repeal had been going on for years, many years, in fact. The fact that litigation was happening at the same time, there was no causal link between the two. Well, didn't the commissioner's letter asking the General Assembly, would you please act so we don't have to pay more attorney's fees in this litigation, tie the two things together? I think that suggests a recognition that there was litigation going on, but I don't think that suggests that the legislators who voted to repeal the statute were doing so in direct response to the court's PI order. Well, is it your understanding that in the circuits that apply some kind of a causation analysis, they put the legislatures on the stand in light of circumstantial evidence like that commissioner's letter, that they actually go, I guess, legislator by legislator and sort of delve into their motives? No, I've not seen a case where that's happened, but for instance, in the Grimarsuk case that Your Honors are very familiar with, the legislature actually said, this is what we're doing. We are responding to this order, and we are creating a special class in response to this class of plaintiffs. That certainly would be very powerful evidence that there's a causal link. Can I ask you about the commissioner's letter? Because it gets to one of my concerns about your argument is sort of how the incentives work out if parties like the plaintiffs here are not prevailing parties. What my concern is is that if we give the state sort of every incentive to fight even the most obviously meritorious claims, knowing that if they lose in court, if a preliminary injunction is entered against them, they can then turn around, ask the legislature, we lost, please repeal this so we don't have to pay fees anymore. The legislature does it, and you're off the hook. I mean, why isn't that a real concern and not just a practical concern but sort of directly oppositional to the whole point of Section 1988? Yes, I understand the point, and I think in a situation like that where that was a valid concern, you might make that a requirement. But that is literally this situation. I don't think so. So to be clear, on the commissioner's letter, I think he said, we don't want to pay attorney's fees for our lawyers, meaning us, not pay attorney's fees to the other side. I think that's what he was saying. And by the way, I think he asked, I guess it was to Senator Stanley, to try to put an acceleration clause in there to get rid of the policy. That never happened. So it's not like he had a great influence on the law. The letter is directly connecting the litigation with the legislation. Do you agree with that? Yes, he makes reference to the litigation. Yes, yes. But that is to one legislator. I don't think that you can impute that to the entire legislature. And I think another point worth mentioning is that the legislature, if it was concerned about the constitutionality, and by the way, the constitutionality of the statute was never anything that was discussed in the legislature. I don't think plaintiffs have cited any evidence that in getting rid of the statute was because of the unconstitutionality of it. But if they had been concerned about the unconstitutional provision related to notice, they could have tweaked the statute to fix that. That's what happened in Grabarsk. They didn't toss the whole statute out. But that's what happened here, which suggests that over a long period of time, people had been pushing to get rid of what they thought was bad policy. It doesn't make it unconstitutional. It's bad policy. They got rid of the entire statute rather than just tweaking it to make it constitutionally sound. And I think when you look at the broader picture. So they didn't just merely prevail, they really prevailed. They got rid of the entire thing. So for a long time, people had been trying to do that, as you said, and appellants successfully accomplished that. With the help of the commissioner's letter. In one sense, appellants did, because LAJC was litigating this case. But LAJC was also one of a group of advocates going back many years who were pushing for the reform. And once the party came to power. And were unsuccessful in doing so until these appellants. I'm sorry? These appellants were successful where you're saying others weren't, right? As lobbyists, as advocates, yes. I don't think you can read the record as the legislature responding to a P.I. order. It certainly didn't lead to an immediate change in the legislative approach. Counsel, what's your colleague says that footnote eight and footnote nine and Smith are not binding their dicta. And we're not compelled by that. And if that's true, maybe we look more at the policy underlying Smith, which might not be present here. What's your response to that argument? Well, to the extent that the argument is that, well, actually, there was not a likely to succeed standard that was required. That's just not true. If you look at the Smith district court case, the district court granted a P.I. based on the likelihood of success. And yet this court in Smith said, we still don't think that that's enough. It's not a decision on the actual merits. It's a prediction of probable success, but it's not the same as success on the actual merits or actual success on the merits. So even if there was some thought that, oh, the Supreme Court might change this, and I think Judge Harris is right, that they did go way out of their way to say it doesn't change our analysis. The fact that they did apply a likely to succeed standard shows that it didn't make a difference. And it does seem like this situation, at least, if Smith is binding and applies across the board to preliminary injunctions, and if there is a subsequent legislative change that moots the case, is this just one of those situations that you say, hey, the way the cards fall, there's just not an opportunity to obtain prevailing party attorneys' fees? That's just the luck of the events of the case? That's correct. I mean, that's certainly the effect of Smith, and I don't think that we can get beyond that. To return to Judge Harris's question about the purpose, I guess, of the statute, to promote vigorous enforcement of the civil rights statute, this was something that the justices in Buckhannon debated, and especially Scalia in concurrence and Ginsburg in dissent. They went back and forth about this, and that's a slightly different situation. But Scalia basically said, well, of course it would promote vigorous enforcement if you allowed attorneys' fees under a catalyst theory, but we're not going to do it because you need some sort of merit-based decision. Plaintiffs also say that lefamine somehow undermines the analysis in Smith, and I don't think that's true either. Lefamine, as Judge Quammen noted, involved in permanent injunction, but it also applied the standard that had been in place for decades, the material alteration of the relationship between the parties. And Buckhannon said in order to have that material alteration, you have to have a merits-based judgment, and Smith said a preliminary injunction is not a merits-based judgment. May I ask you a question? In your brief, you sort of warn us off reconsidering Smith, not as a panel, maybe en banc, by suggesting that there's a lot of confusion in the circuits about it. Smith is a nice, easily applied rule, but there's sort of rampant confusion in the circuits about when exactly a preliminary injunction would qualify. But I looked at the standards that were laid out, and they did look to me like they were just kind of slightly different formulations of the same basic idea. It's merits-based, it alters the legal relationship between the parties, and it hasn't been reversed on the merits, and it can't be because the case is now moot. And so my question is, is there any indication in these circuits, and I take it this is every circuit but ours, that does not apply this kind of bright line rule? We are a true outlier on this. Any indication in these circuits that this has actually proven particularly difficult to apply? Because I didn't see any of, I guess, the most obvious indication would be judges writing opinions saying, oh, my God, this is like an impossible standard, we shouldn't do this. But is there anything, it looks to me like it wouldn't be that hard to apply, but is there something out there that suggests otherwise? Yeah, I can't point to internal circuit confusion or a court saying this is so difficult we can't do it. There's certainly some conflicting standards, and the circuits don't agree on what the standard is. But I think the virtue of a bright line rule like Smith, and this is something that gets at the policy reasons, like Buchanan, is that you don't have to have a sort of separate litigation about, well, is this sufficiently merit-based? Is it something else? Do you apply a rule of reason? It's a very clean rule. That may not be satisfying, but that is one virtue of having a bright line rule. This is maybe not like the right question to ask you, but you seem to know this case very well, so I will ask you. So we're the only circuit that takes this approach. Assuming hypothetically that I agree with you that Winter doesn't quite supersede Smith, it certainly addresses sort of the focus of the concern in Smith. Ought we rethink Smith? And understanding that we can't do that as a panel, obviously, but as a court, is it time to rethink Smith? I think that the on-bank court could have a very vigorous debate about whether with Smith gone, the reasoning of Smith still survives, that a preliminary injunction is at best a prediction of the probable outcome. It relies at the PI stage. You have different evidentiary standards. You don't have full-blown evidence. And so the district court is making a guess, a good-faith guess, about what the likely outcome is going to be. In some cases, perhaps you have a much better guess at whether a policy is unconstitutional or not, because the defendant, after the PI, says, yeah, it's unconstitutional. We're going to capitulate. And that's what happened in some of the cases that Your Honors have recently been on, Rhea Zudin and Gorbachev. That makes it a little bit clearer, but it's at best a prediction of a necessarily uncertain outcome. And so I think that point that I think it was Judge Williams in the Smith case, but on behalf of Judges Wilkinson and Motz, I think that reasoning probably still survives and has some serious weight. So I think we've talked about Winter and the importance of footnote eight that specifically addresses the plaintiff's argument and also the fact that the likely-to-succeed standard was actually applied there. And lefamine, again, the material alteration standard is something that has been out there for a decade or more, so it didn't actually suggest a change in the law the way plaintiffs think. And then finally, the point they make about the Supreme Court denying cert in the Planned Parenthood case out of the Sixth Circuit, of course, the Supreme Court denies cert for many reasons and has consistently advised that you're not supposed to take that as an indication of what would happen on the merits. So I don't think that the Supreme Court has taken any action that really undermines Smith. And, in fact, as was recognized in Helen's argument, Sullivan sort of left open that question. And so for the conclusion to be that they've sort of subsided... And so predated Smith and Winter and lefamine. It did, Your Honor, yes. But I think it would be really curious for the Supreme Court to recognize that it's an open question and expressly leave it open and then sub silentio, to use the term that plaintiffs do on page 53, to sub silentio, overrule it. I think that would be very curious. I don't think the Supreme Court operates that way. Unless there are further questions. Do you have questions? Yes. All right. Thank you. We have time for rebuttal. Thank you, Your Honor. I wanted to address a couple of the questions that came up during the response argument. First, Your Honor raised some questions about causation and what does proof in these cases look like after the entry of the preliminary injunction to show prevailing party status. And I would direct you to the Dearborn case, which is actually the one that the DMV would like us to adopt if we move to a different test. We've argued in our briefing that we don't think a causation pronged to the standard is necessary or appropriate, because it does raise Buchanan-like concerns, although not truly a Buchanan issue. But if you look at how that Dearborn standard is actually applied in the Fifth Circuit in cases like Amawi, which is a very recent case applying that standard, what you see is that the courts simply look to the timing of the events in the case and then infer the causation or the intent of the defendant or the legislature from that. So you don't see extensive discovery into legislators' motives. And in fact, the Amawi court noted that it wasn't clear that that prong, prong three of the Dearborn test, would even apply in a case like ours where it's not the legislative branch, but it's actually the executive, that is the defendant, because of course it's not the executive branch that's enacting the legislation. And so the first step from our position would be that we shouldn't have a causation requirement, and more simple tests like the one set out in Select Milk is easier to apply. But if you look at the causation standard, it need not be a searching inquiry, particularly in a case like this one where the timeline is very clear. And then you also raised some questions about the policy behind the And I just wanted to echo for the court, the concern that was pointed out by our amici in that Smith's standard promotes an asymmetrical standard that places a thumb on the scale in favor of governmental defendants, allowing them to persist in defending in unconstitutional or otherwise unlawful policies or practices in situations where the court has already characterized them as such without financial consequence. Fee shifting, on the other hand, deters unconstitutional or unlawful conduct and motivates governmental actors to respond more promptly and evaluate the challenge statutes or ordinances with more gravity than they otherwise might from the beginning of the case. And then finally, with respect to the questions about en banc, obviously should this court decide that to find prevailing party status in this case would require an overturn of Smith because it has not been sufficiently undermined, then, you know, plaintiffs will gladly participate in that process. But as we've argued, we don't believe that's necessary in light of the new winter standard. Unless there are any more questions. All right, thank you. And thanks to all counsel for an excellent argument on this challenging issue. We appreciate it as a panel. Safe travels, although I know you're neither going very far. Thank you.
judges: Stephanie D. Thacker, Pamela A. Harris, A. Marvin Quattlebaum Jr.